## PARK UTAH MINING CO. et al. v. INDUSTRIAL COMMISSION et al.

No. 4009.   Decided November 15, 1923.   (220 Pac. 389.)

1. MASTER AND SERVANT—INCREASED COMPENSATION FOR INJURY FROM "WILLFUL" FAILURE TO COMPLY WITH ORDER OF COMMISSION HELD UNAUTHORIZED. Where a mining company, failing to comply with an order of the Industrial Commission requiring a bulletin board for reporting missed holes, relied on a custom requiring employés to report to the shift boss, and one was injured by an explosion caused by picking into a missed hole, known to another workman going off the shift, who neglected to report the condition to the shift boss, the Commission was not justified in awarding increased compensation under Comp. Laws 1917, § 3072, as amended by Laws 1921, c. 62, on the ground that the injury was caused by "willful failure" to com-

ply with the Commission's order; the term "willful," as employed in the statute, implying something in addition to mere negligence.

2. MASTER AND SERVANT—WILLFUL FAILURE TO COMPLY WITH ORDER OF INDUSTRIAL COMMISSION HELD QUESTION OF LAW. Where there is no conflicting testimony in the record, and there is no dispute respecting facts found by Commission, or additional facts delineated by the witnesses, the question of employer's "willful" disregard of the statute or of an order of the Industrial Commission is one of law.

Proceeding by the Park Utah Mining Company and the United States Fidelity & Guaranty Company against the Industrial Commission of Utah and Terrence McNulty, to review an award by the Industrial Commission.

AWARD ANNULLED.

*Booth, Lee, Badger & Rich,* of Salt Lake City, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

GIDEON, J.

Review of an award by the Industrial Commission.

On September 27, 1922, Terrence McNulty was injured by an accident arising out of and in the course of his employment by the plaintiff, Park Utah Mining Company. Application was made to the Industrial Commission, and compensation awarded. On February 20, 1923, McNulty filed a further application with the Commission for additional compensation, on the ground that the injuries received were caused by the willful failure of his employer to comply with the regulations of the Commission in not installing a bulletin or blackboard within its mine to have reported thereon any blasts that had failed to fire or explode, referred to in the record as "missed holes"; the purpose being that the on-going shifts of miners might know of the fact of missed holes for their safety and protection.

The application here is to review an award made upon the hearing had pursuant to the petition of February 20, 1923.

The Commission made the following findings:

"That on the 27th day of September, 1922, Terrence McNulty, while picking out for a set of timbers in the Park Utah Mine, picked into a missed hole, which caused an explosion and severe injuries to the applicant about the face, hands and body.

"That Axel Peterson, on September 27, 1922, was employed ·by the Park Utah Mining Company at Park City, Utah, on the opposite shift to the applicant, and had drilled a hole at one side of the drift to make room for the foot of a post. This was the hole that misfired and the one that the applicant picked into. Mr. Peterson· failed to notify the foreman of the mine or any one in authority regarding the missed hole.

"That the Park Mining Company has not provided a blackboard or bulletin board for the reporting of missed holes thereon; they relied upon their employés reporting to the shift boss or some official in authority of such missed holes.

"On the 15th day of August, 1919, the Commission adopted General Safety Orders covering underground metal mines operations, and said orders were in effect on September 27, 1922. On page 18 of said Safety Orders, section 22, subsec. (b), provides as follows:

" '(b)   The number of explosions in every blast, except in cases of simultaneous firing, shall be counted by the man firing the same, and if the total number of explosions is less than the number of charges, a report of the discrepancy shall be made as the superintendent shall direct. Whenever feasible the superintendent shall provide a bulletin on which reports of missed holes shall be posted, so that they can be seen by any man going on duty. When a blast has been fired, and it is not certain that all the charges have exploded, no person shall enter the place where such charges were placed within 45 minutes after the explosion, and any case of uncertainty shall be considered as a missed hole.'

"That it would have been feasible to have provided a bulletin board on which to report missed holes in this particular mine, the Park Utah mine."

It further appears that it was the custom, and the employés of the plaintiff mining company were required, in going off shift, to report to the shift boss the fact of any blasts having misfired during the closing shift; and in turn it was the duty of the shift boss to report such fact to the on-going employés.

The contention is that neither the findings of the Commissionu nor the testimony warrants the conclusion of the Commission and its order awarding additional compensation.

The determination of the question presented requires a construction of Comp. Laws Utah 1917, § 3072, as amended by chapter 67, Laws Utah 1921. That section reads as follows:

"No employer shall require or knowingly permit any employé to be in any employment or place of employment which is not safe, and no such employer shall fail to provide, and use safety devices and safeguards, or fail to obey and follow orders of the Commission, or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety, and welfare of his employés; and no employer or other person shall hereafter construct or occupy or maintain any place of employment that is not safe. Where injury is caused by the willful failure of the employer to comply with any statute of the state or any lawful order of the Industrial Commission, compensation as provided in this act shall be increased fifteen per cent., except in case of injury resulting in death."

We are concerned with the last sentence of that section, namely, "Where injury is caused by the willful failure of the employer to comply," etc. Evidently it was the view of the Commission that failure to comply with its general order of August 15, 1919, as set out in the findings, constituted willful failure on the part of the employer to comply with that order.

It should be stated that there is no evidence in the record that any notice had been given, or suggestion made, to the plaintiff mining company that the method employed by it was not satisfactory to the Commission, or that the Commission considered the method employed as less likely to accomplish the purpose for which the order had been issued. In fact, it is not shown that the mining company had any actual knowledge of the existence of this general order.

Many of the other states have provisions in their Workmen's Compensation Acts of like import to that found in our statute. In the construction of those provisions the courts have not attempted any statement or definition of what acts of omission or commission constitute or go to make up a willful failure or a serious failure to comply with the provisions of the statutes or rightful orders made by the boards or commissions. It is probably not desirable nor possible to include

within a definition of those terms all of the elements or what particular elements in any given case enter into a willful violation of the statute or of the Commission's orders. The authorities, however, are agreed that negligence alone, or even gross negligence, is not sufficient to constitute "willful failure" or "serious failure" to comply with the requirements of the statute or orders of the Commission. There is nothing in the findings or in the evidence before the Commission to indicate or suggest that the plaintiff mining company or its superintendent was acting in disregard of the safety of its employés, or to indicate a willingness on the part of the superintendent to inflict injury upon the employés. On the contrary, the evidence is undisputed to the effect that the plaintiff mining company considered it the safer method to require the workmen coming off shift to report any missed holes to the shift boss, and he in turn would advise the workmen going into the mine of such fact. The justification for adopting that method or practice is that many of the employés of the mining company were foreigners and could not read or understand the English language; hence it was considered that writing notices on a blackboard or bulletin would not give any information to the workmen going on duty, and that the better method was to require the workmen coming off shift to report the situation respecting missed holes to the one in charge of the work, so that he in turn could advise the men going to work of the condition of the mine. In the instant case the workman going off shift, a Mr. Peterson, who knew of the hole that had missed fire, neglected his duty to report the same to the shift boss. It is claimed by this employé that he forgot the fact of there being a missed hole, and therefore made no report.

Whether the method employed was the best that could or should have been adopted is immaterial; but, in any event, it negatives any willful intent on the part of the superintendent, or the other officers of the company, to wilfully do any act or omit to do any act with a reckless disregard for the safety of the employés. The term "willful," as employed in the section quoted, considered in connec-

tion with the other duties imposed upon the employer, implies something in addition to mere negligence.

The Assistant Attorney General, appearing for the Commission, relies upon the opinion of the Supreme Court of California in *E. Clemens Horst Co.* v. *Ind. Acc. Comm.*, 184 Cal. 180, 193 Pac. 105, 16 A. L. R. 611. The Workmen's Compensation Act of California (St. 1917, p. 834, § 6 [b] provides, ''Where the employé is injured by reason of * * * serious and willful misconduct'' the compensation recoverable may be increased. In the consideration of that statute in the case referred to the court considered ''serious misconduct'' and ''willful misconduct'' separately. In the discussion of ''willful misconduct'' the court said:

"It has frequently been said that willful misconduct involves the knowledge of the person that the thing which he is doing is wrong. *Lewis* v. *G. W. Ry. Co.*, L. R. 3 Q. B. D. 195; *In re Burns*, 218 Mass. 8, 105 N. E. 601, Ann. Cas. 1916A, 787; *Riley* v. *Stand. Acc. Ins. Co.*, 227 Mass. 55, 116 N. E. 259; *Beckles' Case*, 230 Mass. 272, 119 N. E. 653. Conceding that knowledge is required, it seems to us that in order to prove the requisite knowledge, it is not necessary for the evidence to show positively that the person was notified of the unsafe condition of his premises, but that it is sufficient if it appears that the circumstances surrounding the act of commission or omission are such as 'evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of.' *Railway Co.* v. *Bryan*, 107 Ind. 51, 7 N. E. 807. See, also, *Pittsburgh, C., O. & St. L. Ry. Co.* v. *Judd*, 10 Ind. App. 213, 36 N. E. 775."

The court, after making the foregoing statement, concluded, and we think rightly so, that the facts as disclosed by the record before it justified the Commission in allowing additional compensation. As pointed out herein, there is nothing in the findings of the Commission or in the evidence indicating a reckless disregard for the safety of others or a willingness to inflict the injury complained of.

The cases cited by the Assistant Attorney General from the Wisconsin court are not controlling. The statute of that state (St. 1921, § 2394-9, subsec. 5 [h]) provides, ''Where injury is caused by the failure of the employer to comply with any statute of the state or any lawful order of the Industrial Commission'' compensation may be increased. The word ''will-

ful" is not in the Wisconsin statute. See note to *Wick* v. *Gunn*, 4 A. L. R. 116.

It is argued by the Assistant Attorney General, on behalf of the Commission, that whether or not the failure of the employer to comply with the order of the Commission was willful is a question of fact, and that the Commission's finding upon the matter is conclusive and binding upon us. Ordinarily, it may be conceded that an inquiry as to whether the acts of an employer are willful and done in disregard of the statute or an order of the Commission leads to the determination of a question of fact. But where there **2** is no conflicting testimony in the record, and where there is no dispute respecting the facts found by the Commission or additional facts delineated by the witnesses, the matter then becomes a question of law. *In re Riley*, 227 Mass. 55, 116 N. E. 259.

There seems to be no escape from the conclusion that the order of the Commission awarding additional compensation to the applicant is without support of any competent substantial evidence. This of necessity works an annullment of the award, and such is the order.

WEBER, C. J., and THURMAN, CHERRY, and FRICK, JJ., concur.